Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/18/2019 01:10 AM CDT

State of Nebraska, appellee, v.
Nathan M. Thomas, appellant.
___ N.W.2d ___

Filed August 30, 2019.    No. S-18-220.

1. **Rules of Evidence: Other Acts: Appeal and Error.** It is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 2016), and the trial court's decision will not be reversed absent an abuse of discretion.

2. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3. **Rules of Evidence: Other Acts.** Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 2016), prohibits the admission of other bad acts evidence for the purpose of demonstrating a person's propensity to act in a certain manner. But evidence of other crimes which is relevant for any purpose other than to show the actor's propensity is admissible under rule 404(2).

4. **Rules of Evidence: Other Acts: Proof.** Under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 2016), evidence may be admissible for such purposes as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

5. **Rules of Evidence: Other Acts: Appeal and Error.** An appellate court's analysis under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 2016), considers whether the (1) evidence was relevant for some purpose other than to prove the character of a person to show that

he or she acted in conformity therewith, (2) probative value is substantially outweighed by its potential for unfair prejudice, and (3) trial court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was admitted.

6. **Rules of Evidence: Words and Phrases.** Evidence under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 2016), that is offered for a proper purpose is often referred to as having "special" or "independent" relevance, which means that its relevance does not depend upon its tendency to show propensity.

7. **Rules of Evidence: Other Acts.** The admissibility of other crimes evidence under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 2016), must be determined upon the facts of each case and is within the discretion of the trial court.

8. **Criminal Law: Words and Phrases.** Motive is defined as that which leads or tempts the mind to indulge in a criminal act.

9. **Criminal Law: Intent: Proof.** Motive, even when not an element of a charged crime, is relevant to the State's proof of the intent element of the crime.

10. **Criminal Law.** Motive qualifies as a legitimate noncharacter theory because although character carries a connotation of an enduring general propensity, a motive is a situationally specific emotion.

11. **Rules of Evidence.** Evidence that is admissible under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 2016), may be excluded under Neb. R. Evid. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016), if its probative value is substantially outweighed by the danger of unfair prejudice.

12. **Evidence.** The probative value of evidence involves a measurement of the degree to which the evidence persuades the trier of fact that the particular fact exists and the distance of the fact from the ultimate issue of the case.

13. ____. Most, if not all, evidence offered by a party is calculated to be prejudicial to the opposing party.

14. **Trial: Evidence.** Balancing the probative value of evidence against the danger of unfair prejudice is within the discretion of the trial court.

15. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

16. **Trial: Evidence.** Even if there are inadmissible parts within an exhibit, an objection to an exhibit as a whole is properly overruled where a part of the exhibit is admissible.

17. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, Erin E. Tangeman, and, on brief, Joe Meyer for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

CASSEL, J.

## I. INTRODUCTION

Nathan M. Thomas appeals, challenging one of his two convictions by a jury—for electronically offering to perform oral sex upon a police decoy portraying a 14-year-old girl.[1] He first claims that "[rule] 404 evidence"[2] of a sexually explicit online "chat" with another underage woman was admitted for improper purposes and was unfairly prejudicial. We conclude that both bases, motive and absence of mistake or accident, were proper. We also conclude that the district court did not abuse its discretion in balancing probity and prejudice. Second, Thomas asserts that his solicitation of "eating you out" was not sufficient to support the conviction. He is wrong. We affirm.

## II. BACKGROUND

Effectively, only one of Thomas' two convictions is before us, regarding count 1. The district court admitted the rule 404 evidence only for purposes of that count. And Thomas challenges the sufficiency of the evidence only as to that count. Although we note the other charge below in passing, it otherwise has no bearing on this appeal.

---

[1] See Neb. Rev. Stat. § 28-833 (Reissue 2016) (enticement by electronic communication device).

[2] Brief for appellant at 18. See Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404 (Reissue 2016).

In the balance of this section, we first summarize the communications with the decoy and the events leading to the arrest and charges. We then recount the proceedings and evidence regarding Thomas' earlier chat with a real 14-year-old girl employing the username "Wolfgirl 458222" (Wolfgirl)—the State's rule 404 evidence. We then briefly summarize the evidence at trial.

## 1. Decoy

In February 2017, Nicholas Frederick, a Nebraska State Patrol investigator, conducted an online undercover investigation for child enticement. Frederick's online undercover persona was a 14-year-old girl (the decoy). He found an online advertisement stating that a 20-year-old male was seeking to perform oral sex on a non-age-specific female. Thomas later admitted to posting the advertisement, sending messages to the decoy, and arranging to meet her. We disregard spelling and grammatical errors in the communications we summarize next.

The decoy, via email, responded to the advertisement, "Hey just saw ur ad, you up for hanging with someone younger?" Thomas replied, "Possibly." The decoy replied "[O]K," and Thomas asked, "How old are you? Can I see a pic?" The decoy answered, "Im 14 almost 15 so don't want 2 send pic 2 someone I know." At trial, Frederick clarified that he meant to say "don't know." Thomas asked if the decoy had a particular photograph-sharing application. The decoy replied that she did not but stated that Thomas could send a text message. The decoy furnished an undercover cell phone number and informed Thomas of her "name."

Thomas and the decoy continued their conversation via text messages. Thomas continued to ask for pictures, which the decoy declined to send. Thomas asked, "So what do you want from this?" The decoy answered, "Not real sure. Not lots of experience talking to people from [online advertisements]." After each provided a brief self-description, Thomas asked, "If we did meet up what would you like to happen? Me just eating

you out or more?" The decoy replied, "That could start things and see what we want to do after that unless u think something else?" Thomas then asked if he should pick her up and if they could go park somewhere private. The decoy responded that she would need to be picked up. Thomas asked when she would want to do it, and the decoy answered, "So u really want 2? Probably soon cuz need to be home before mom gets home." They then discussed an area for the meeting location, and the decoy stated that she was nervous and wanted to know what he expected. He replied, "The only thing I want to happen for now is maybe some kissing and eating you out that's all." After further discussion of a meeting location, the decoy sent a "pin drop," indicating a particular location for the meeting. Thomas said he drove a "gold Camry" and was on his way. The decoy directed Thomas to a gas station within the pin drop area as the place to meet.

While Frederick was setting up the location with Thomas, Frederick briefed other investigators regarding the situation. Frederick showed them a picture of Thomas, told them that Thomas would be driving a gold Camry, and requested that they go to the gas station for surveillance and take Thomas into custody if he showed up.

Five investigators in plain clothes and unmarked police cars went to the gas station. Very soon after the officers were in position, Thomas pulled into a parking spot and the investigators arrested him. Before returning to the investigative services center, one investigator seized Thomas' cell phone from his car. Later, Thomas consented to a search of his cell phone, waived his *Miranda* rights, and made a statement to the police.

In an amended information, the State charged Thomas with two counts. The first count—the only one relevant on appeal—was for "Enticement by Electronic Communication Device," in violation of § 28-833. The second count charged the offense of "Child Enticement with Electronic Communication Device," in violation of Neb. Rev. Stat. § 28-320.02 (Reissue 2016). Thomas pled not guilty to both counts.

## 2. Wolfgirl Chat Evidence

The State filed a notice of intent to produce evidence of other crimes, wrongs, or acts pursuant to rule 404. The State's rule 404 motion asserted that the evidence was intended to show motive, opportunity, intent, identity, plan or scheme, absence of mistake or accident, or "some other narrower purpose."

The district court held a hearing on the rule 404 motion where the State presented evidence of sexually explicit conversations with underage women retrieved from Thomas' cell phone. Although only the chat with Wolfgirl is relevant on appeal, the State made a single argument addressing all of the purported rule 404 evidence.

The State argued that Thomas' explicit photographs and requests for pictures of the underage women's genitals would be relevant evidence against an entrapment defense and would show motive, plan or scheme, or absence of mistake or accident. The State then specified its reasoning. As to motive, the conversations would show sexual gratification, and as to plan or scheme, the conversations would show how he connected and engaged in sexually explicit contact with underage women. As to absence of mistake or accident, the conversations would show that Thomas was predisposed to engage in sexually explicit conversations with people who are under the age of 15 years.

Thomas argued that the "prejudicial impact of [the Wolfgirl] evidence outweighs whatever probative value it has." He also asserted that the State did not prove by clear and convincing evidence the true age of the underage women and that the evidence was not sufficiently similar to the charged conduct. These other assertions, however, are not argued on appeal.

The district court found that the conversation between Thomas and Wolfgirl was relevant to the charges. The Wolfgirl conversation would be admissible, the court concluded, to show motive or absence of mistake or accident. However, the court ruled that without clear and convincing evidence that Wolfgirl was under the age of 16, the evidence would not be admitted.

After working with police officers in Pittsburg, California, Nebraska law enforcement confirmed that 14-year-old R.H., with whom Thomas had had sexually explicit conversations, was the owner and creator of Wolfgirl. In separate motions, the State requested the court to reconsider the rule 404 motion and to endorse R.H. as an additional witness.

The State argued that Wolfgirl's testimony would establish ownership of the Wolfgirl account and that the conversation would be relevant evidence. Thomas renewed his relevancy and unfair prejudice arguments to both motions. The court sustained the motion to endorse and overruled the motion to reconsider.

Before opening statements commenced at the jury trial, the State moved to reopen evidence on the rule 404 motion. The State presented as an exhibit a trial stipulation intended to eliminate the necessity of calling R.H. to testify regarding foundation for the Wolfgirl conversation. Again, Thomas asserted that the Wolfgirl conversation was not relevant to either count and that "to the extent it is relevant, it's unduly prejudicial." The court received the trial stipulation into evidence and found the State had proved by clear and convincing evidence that Wolfgirl was a child under 16 years of age and that the evidence was admissible.

The State offered as another exhibit a transcript of the Wolfgirl conversation, with images. The court asked if counsel would raise the same rule 404 objections to that exhibit, and Thomas' counsel answered, "Yes." Further, in front of the jury, the court overruled the objection to the transcript and admitted it for specified limited purposes. Prior to that admission, the court gave a limiting instruction, "This evidence is admitted for the limited purpose of helping you consider matters of motive, or absence of mistake or accident as they relate to the elements of the charges contained in Count 1 in this case."

### 3. Relevant Evidence at Trial

In addition to the transcript of the Wolfgirl chat, the State's trial evidence included the testimony of five witnesses,

Thomas' recorded statement to the police, his jail cell calls to his brother, his online advertisement, and the conversations between Thomas and the decoy. We have already summarized his conversations with the decoy.

Thomas testified in his defense, emphasizing his disbelief of the decoy's age and existence. He testified that when the decoy told him her age, he did not believe her. He related that he had been in online situations before where women who were older pretended to be younger and where he had acted older. Alternatively, he testified that online, one never knows if the responder is a real person or a "bot" trying "a scam." He explained that he asked for pictures to ascertain whether the person responding was real. He stated that if he had known the decoy was under age 16, he would not have engaged in any sex act with her.

The jury found Thomas guilty on both counts. The court imposed sentences, and Thomas perfected an appeal. We moved the appeal to our docket.[3]

## III. ASSIGNMENTS OF ERROR

Thomas assigns that the district court erred in admitting the evidence of the Wolfgirl conversation under rule 404(2) and that the evidence presented at trial was insufficient to support a conviction on count 1.

## IV. STANDARD OF REVIEW

[1] It is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under rule 404(2), and the trial court's decision will not be reversed absent an abuse of discretion.[4]

[2] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence,

---

[3] Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

[4] *State v. Kidder*, 299 Neb. 232, 908 N.W.2d 1 (2018).

pass on the credibility of the witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5]

## V. ANALYSIS

### 1. Rule 404 Evidence

Thomas argues that the admission of the Wolfgirl conversation did not inform any element of count 1 and was not within the relevant limited uses under rule 404(2). Further, he contends that the irrelevant sexually explicit language and images in the conversation prejudiced the jury.

[3,4] Rule 404(2) prohibits the admission of other bad acts evidence for the purpose of demonstrating a person's propensity to act in a certain manner. But evidence of other crimes which is relevant for any purpose other than to show the actor's propensity is admissible under rule 404(2).[6] Thus, it may be admissible for such purposes as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[7]

[5-7] We must consider whether the evidence of prior bad acts was admissible for a proper purpose other than propensity to commit the crimes charged. An appellate court's analysis under rule 404(2) considers whether the (1) evidence was relevant for some purpose other than to prove the character of a person to show that he or she acted in conformity therewith, (2) probative value is substantially outweighed by its potential for unfair prejudice, and (3) trial court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was

---

[5] *State v. Mueller*, 301 Neb. 778, 920 N.W.2d 424 (2018).

[6] *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013).

[7] See *State v. Sanchez*, 257 Neb. 291, 597 N.W.2d 361 (1999).

admitted.[8] Evidence that is offered for a proper purpose is often referred to as having "special" or "independent" relevance, which means that its relevance does not depend upon its tendency to show propensity.[9] The admissibility of other crimes evidence under rule 404(2) must be determined upon the facts of each case and is within the discretion of the trial court.[10]

### (a) Motive

[8-10] We must consider whether the evidence of prior bad acts was relevant to show motive other than Thomas' propensity to commit the crimes charged. Motive is defined as that which leads or tempts the mind to indulge in a criminal act.[11] Motive, even when not an element of the charged crime, is nevertheless relevant to the State's proof of the intent element of the crime.[12] Motive qualifies as a legitimate noncharacter theory because although character carries a connotation of an enduring general propensity, a motive is a situationally specific emotion.[13] Several Nebraska cases inform our analysis of rule 404(2) evidence admitted to show motive.

In *State v. Sanchez*,[14] the trial court admitted rule 404(2) evidence of when the defendant had sexually assaulted his children aged 13 and 5 and of when at 22 years old he sexually assaulted a 14-year-old girl and impregnated her. The State argued that the other crimes evidence proved motive to obtain sexual gratification from underage women, because many adults find it hard to believe that an adult is sexually attracted to a child. We reasoned that the argument only illustrated that

---

[8] See *State v. Torres*, 283 Neb. 142, 812 N.W.2d 213 (2012).

[9] *Id.*

[10] *Sanchez, supra* note 7.

[11] *State v. Payne-McCoy*, 284 Neb. 302, 818 N.W.2d 608 (2012).

[12] *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011).

[13] *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016).

[14] *Sanchez, supra* note 7.

under the guise of motive, the State was attempting to prove propensity. We held that although the State's conclusion was logically relevant, it did not articulate a legitimate fact of consequence to the determination of guilt. Therefore, the crimes did not have independent relevance and were inadmissible as to motive.

Importantly, intent was not an element of the crime charged in *Sanchez*. Because intent was not an element of the crime charged, we stated intent was not a fact that was of consequence. Then, in discussing motive, we noted our holding in an earlier case that even if proof of motive is not an element of a crime, any motive for a crime is relevant to the State's proof of the intent element. Because here, intent is an element under § 28-833(1), *Sanchez* leaves open the possibility that motive could have independent relevance because it would be relevant to proof of intent.

In *State v. Trotter*,[15] the court admitted evidence of the defendant's prior abuse of his ex-wives to show a similar motive that the defendant used his superior size and strength to control the behavior of another. We reasoned that the State improperly attempted to show that because the defendant may have been motivated to control his ex-wives through his superior strength, he was likely to use that strength to control someone else. In determining that the evidence was inadmissible to show motive, we reasoned that the focus on the defendant's actions rather than his motive was impermissible propensity evidence. In *Trotter*, we contrasted the situation with that in *State v. Phelps*.[16] In *Phelps*, a defendant was charged with kidnapping a 9-year-old girl who was never found. We determined that evidence of six prior acts of sexual contact by the defendant with young girls showed motive—a sexual motive—which tended to show that the defendant's motive for kidnapping was to achieve sexual gratification.

---

[15] *State v. Trotter*, 262 Neb. 443, 632 N.W.2d 325 (2001).

[16] *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676 (1992).

In *State v. Payne-McCoy*,[17] we stated that intent was not at issue in the case. We reasoned that prior drug sales to the victim did not explain the defendant's motive to sell drugs on the day of the crime, except to show that the defendant sold drugs to the victim before and would do it again. We noted that this type of logic is exactly what is prohibited by rule 404(2). We determined that the rule 404 evidence of prior drug deals was inadmissible to prove motive.

In *Torres*,[18] the district court admitted evidence of a prior kidnapping that showed the defendant's motive was to restrain, rob, and kill the victim to obtain money and transportation to Texas. We stated that intent was not at issue. Turning to motive, we observed that a person's prior actions can help to show motive because of the light they shed on that person's state of mind. We explained that there is a fine line between prior bad acts evidence that goes to propensity and evidence of the actor's motive to commit a later crime. We explained that evidence is not barred just because its relevance could be characterized as propensity: "[S]o long as the evidence is also relevant for reasons not based on the defendant's character, it is admissible under rule 404(2)."[19] We clarified that "'propensity' is meant to refer simply to criminal propensity, i.e., character,"[20] and not to "a specific propensity to do a particular thing."[21] With regard to motive evidence, we reasoned:

> It can easily be framed as relevant because it shows a defendant's "propensity" to commit crimes for a particular reason, i.e., motive. Someone who has a motive to commit a crime could also be described as having a "propensity" to commit the crime. But where the defendant's

---

[17] *Payne-McCoy, supra* note 11.

[18] *Torres, supra* note 8.

[19] *Id.* at 158, 812 N.W.2d at 232.

[20] *Id.* at 159, 812 N.W.2d at 233.

[21] *Id.* at 159, 812 N.W.2d at 232.

motive is particular—in other words, is not based in the defendant's character—evidence of prior acts is nonetheless admissible to show the defendant's motive to commit the charged crime because an inference of a *criminal* propensity is not required to establish independent relevance.[22]

There, we agreed with the district court that the prior kidnapping was independently relevant to show the defendant's motive, to obtain money and transportation to Texas.

We are also persuaded by cases from the Seventh Circuit. In *U.S. v. Zahursky*,[23] the defendant challenged admission of prior chats with others, claiming that they "gave unnecessary, shocking, repulsive and sexually explicit details." The Seventh Circuit quoted an earlier case stating that "'[p]rior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children.'"[24] It reasoned that in earlier chats with different individuals, the defendant admitted to having sex with a 14-year-old or having a sexual interest in 14-year-old girls. The court stated that the defendant's "admission to having had sex with a fourteen-year-old and the sexually explicit nature of the [earlier] chats make them probative as to his intent and motive in chatting with [the victim in the instant case] and then meeting her . . . ."[25]

In *U.S. v. Chambers*,[26] the defendant objected to admission of his chat with a special agent posing as a minor, arguing that it merely demonstrated his propensity to entice minors. But the Seventh Circuit determined that the chat was admissible to show motive and intent.

---

[22] *Id.* at 159-60, 812 N.W.2d at 233 (emphasis in original).

[23] *U.S. v. Zahursky*, 580 F.3d 515, 524 (7th Cir. 2009).

[24] *Id.*, quoting *U.S. v. Sebolt*, 460 F.3d 910 (7th Cir. 2006).

[25] *Id.*

[26] *U.S. v. Chambers*, 642 F.3d 588 (7th Cir. 2011).

Here, the court admitted the Wolfgirl conversation for the purpose of showing motive to commit the charged offense. As noted above, motive is relevant to the State's proof of the intent element of the crime.[27] And intent was at issue—whether Thomas "knowingly and intentionally utilize[d] an electronic communication device to contact . . . a peace officer who is believed by [Thomas] to be a child under sixteen years of age."[28] Evidence that Thomas carried on a sexually explicit chat with a 13-year-old girl is probative as to his motive in texting with the decoy, purportedly a 14-year-old girl, and arranging to meet her. We conclude the district court did not abuse its discretion in admitting the Wolfgirl conversation to show motive.

### (b) Absence of Mistake or Accident

Next, we must consider whether the district court properly admitted the evidence of the prior bad acts to show absence of mistake or accident. In *Trotter*,[29] we discussed when prior bad acts are relevant to show absence of mistake or accident in child abuse cases. Where a defendant does not raise accident or mistake as to how the victim was injured, the evidence is inadmissible for that purpose. We reasoned that the evidence of spousal abuse did not negate the claim of accident in the child abuse case, because the State proffered the evidence to show the propensity of someone who abused people in general. The evidence was inadmissible as to absence of mistake or accident.

Here, the court also admitted the evidence of the Wolfgirl conversation to show absence of mistake or accident. Under § 28-833, a defendant can be found guilty of the crime when he or she communicates with a peace officer whom he or she believed to be a child under the age of 16. Here, the State was

---

[27] *Collins, supra* note 12.

[28] See § 28-833(1).

[29] *Trotter, supra* note 15.

required to prove that Thomas believed the decoy was a child under 16 years of age. It could do so by presenting direct evidence of Thomas' belief or, inversely, by presenting evidence that there was an absence of mistake as to his belief of the age of the decoy. Therefore, the belief or absence of mistake of belief as to the decoy's age was a relevant issue in the case.[30]

One of the dissents makes a distinction between the two types of recipients under § 28-833, but we disagree that the distinction is of consequence. The evil that the statute is aimed at is stopping individuals 19 years of age or over from knowingly and intentionally using an electronic communication device to transmit inappropriate material to a child under 16 years of age. Whether the inappropriate material is directed to an actual child or to a person that the transmitter believes to be a child is of little importance. To be guilty, the transmitter must know that the child is under age 16 (for an actual child) or believe the recipient is a child under age 16 (for a decoy). Undoubtedly, a common defense in such prosecutions is that the transmitter did not know (for an actual child) or believe (for a decoy) that the recipient was a child under age 16. In such a situation, the State would want to show that the transmitter was not mistaken (absence of mistake) about the recipient's age, i.e., that the transmitter intended (absence of accident) to transmit inappropriate material to a child under age 16.

Because the belief of the age of the decoy was relevant, we must determine if the Wolfgirl conversation had independent relevance. In order to show that Thomas did not have a mistaken belief as to the age of the decoy, the State presented evidence of other instances of Thomas' belief or absence of mistake. The Wolfgirl chat evidence contained direct statements by the victim that she was 13 years old and showed Thomas' nonchalance to her age. The conversation between Thomas and the decoy was similar, because the decoy expressly stated she was 14 years old and Thomas continued with the conversation

---

[30] See *Sanchez, supra* note 7.

unaffected. In both instances, Thomas never questioned the recipient's statement of age or, in any way, was led to believe that she was of a different age.

The Wolfgirl evidence negated the defense that Thomas did not believe the decoy was her claimed age. Such evidence tends to show that Thomas did not mistakenly believe he was chatting with an adult; instead, he targeted minors. Even though the Wolfgirl chat was between Thomas and a child under 16 years of age rather than a peace officer pretending to be a child under 16 years of age, the evidence offered the same probative nature as to Thomas' belief of the recipient's explicitly stated age. The evidence shows not Thomas' general propensity to talk to underage women, but, rather, that there was no mistake regarding Thomas' knowledge of the recipient's age. Similarly, in *Zahursky,*[31] the Seventh Circuit stated that "[t]he revelations of the girls' ages in the chats make the chat evidence probative as to [the defendant's] knowledge and absence of mistake" as to the recipients' ages. The Wolfgirl evidence was independently relevant. Therefore, we find no abuse of discretion by the district court in determining the evidence was relevant to show absence of mistake or accident.

### (c) Probative Value Versus
### Unfair Prejudice

[11] Having found no abuse of discretion by the district court in determining that the Wolfgirl conversation was relevant for the specified limited purposes, we must also review for abuse of discretion the court's balancing of unfair prejudice against probative value. Evidence that is admissible under rule 404(2) may be excluded under Neb. R. Evid. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016), if its probative value is substantially outweighed by the danger of unfair prejudice.[32] As the rule plainly states, only when the danger of unfair prejudice

---

[31] *Zahursky, supra* note 23, 580 F.3d at 524.

[32] *Payne-McCoy, supra* note 11.

substantially outweighs the evidence's probative value does rule 403 counsel exclusion. And again, we emphasize that we review the decision only for an abuse of discretion.

[12-14] The probative value of evidence involves a measurement of the degree to which the evidence persuades the trier of fact that the particular fact exists and the distance of the fact from the ultimate issue of the case.[33] Most, if not all, evidence offered by a party is calculated to be prejudicial to the opposing party.[34] Only evidence tending to suggest a decision on an improper basis is unfairly prejudicial.[35] Balancing the probative value of evidence against the danger of unfair prejudice is within the discretion of the trial court, whose decision we will not reverse unless there is an abuse of discretion.[36] The district court found that the probative value of the Wolfgirl conversation was not substantially outweighed by the danger of unfair prejudice.

### (i) Redaction Not Raised or Preserved

One of the dissenting opinions seems to suggest that the exhibit should have been redacted, but neither of its suggestions is properly before us.

[15] Although that dissent first argues that the images should have been redacted, Thomas did not raise the issue on appeal. Before the district court, Thomas, in a summary fashion, did request redaction of the images. There, he preserved the issue.[37] But on appeal, he simply does not raise redaction of the images. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[38] His assignment

---

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *State v. Oldson, supra* note 13.

[37] See *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013).

[38] *State v. Munoz, ante* p. 69, 927 N.W.2d 25 (2019).

asserted that the district court erred "in admitting evidence of the Wolfgirl chat under Evidence Rule 404." The assignment does not mention either redaction or rule 403. While his argument does discuss rule 403, it does so only in the context of the entire exhibit. He does not argue that the images should have been redacted. Thus, with respect to the images, Thomas has placed the issue before us on an "all or nothing" basis.

That dissent also suggests that several pages of the exhibit "would have accomplished the State's needs." But Thomas never sought redaction of part of the text. And he had the burden of doing so.

[16,17] Even if there are inadmissible parts within an exhibit, an objection to an exhibit as a whole is properly overruled where a part of the exhibit is admissible.[39] A learned treatise explains:

> Suppose that evidence sought to be introduced consists of several statements or items tendered as a unit in a deposition, letter, conversation, or trial transcript. Assume that the opponent objects to the whole of the evidence when some parts are subject to the objection made but other parts are not. In this situation, the judge does not err by overruling the objection. It is not the judge's responsibility to sever the bad parts if some are good. That is the opponent's burden.[40]

---

[39] *Huston, supra* note 37. See, also, *State v. Merrill*, 252 Neb. 736, 566 N.W.2d 742 (1997) (affirming admission of photograph album when 2 of 32 photographs were admissible).

[40] 1 McCormick on Evidence § 52 at 362 (Kenneth S. Broun et al. eds., 7th ed. 2013 & Supp. 2016). See, also, *Foster v. S.C.D.H.P.T.*, 306 S.C. 519, 413 S.E.2d 31 (1992) (defendant's letter was admissible when defendant objected to entirety of letter rather than specific portions that were inadmissible); *State v. Graham*, 641 S.W.2d 102 (Mo. 1982) (business records exception does not make all parts admissible; portions can be excluded if specific objections are made); *Speier v. Webster College*, 616 S.W.2d 617 (Tex. 1981) (summary evidence of witnesses testimony is admissible unless specific objection is made to inadmissible portions).

Thus, to the extent the dissent suggests that redaction of part of the text of the Wolfgirl chat should have occurred (apparently on the district court's own initiative), it would reverse the district court on an issue not raised before that court. But that is not our function. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.[41] Because redaction of part of the text was not raised below, we cannot consider it here.

That dissent also discusses the concept of plain error, although it is not clear that it does so with respect to redaction. Neither of the cited cases involved rule 403 balancing or sua sponte redaction of an exhibit. Thus, we read the dissent's plain error discussion as an expression of its level of concern regarding the issue that is properly before us.

In other words, this leaves us where Thomas chose to place us—considering only the exhibit as a whole. We must determine whether the district court abused its discretion in determining that the unfair prejudice of the Wolfgirl chat evidence, in its entirety, did not substantially outweigh its probative value.

*(ii) Balancing*

The Wolfgirl conversation was highly probative to show motive and absence of mistake or accident as to the decoy's age. That 50-page conversation, containing sexually explicit photographs and language, certainly was prejudicial to Thomas. However, there were striking similarities between the Wolfgirl conversation and the charged offense. In both instances, Thomas asked about the recipient's age; when he learned she was underage, he persisted. In the remaining conversation, he ignored her signals that she was, in fact, underage. He sought pictures of both recipients, and in pursuit of his sexual gratification, he disregarded the respective assertions of age. The probative value of the conversation to show motive and absence of mistake or accident went to the heart of Thomas' defense.

---

[41] *Huston, supra* note 37.

Was the content of the Wolfgirl conversation so unfairly prejudicial that it substantially outweighed the high probative value? We conclude that it did not. In *Chambers*, the Seventh Circuit discussed the federal equivalent of the rule 403 balancing test as to several conversations with victims and the defendant and stated, "Sexual abuse of a child or the attempt thereof is a disgusting crime and any evidence of it is no doubt unfavorable to the defendant, but here it was not unfairly prejudicial."[42] Several other circuits have held that admitting several sexually explicit images introduced as rule 404(2) evidence is not unfairly prejudicial.[43] We agree with the federal courts that although the evidence was highly prejudicial in its nature, it was not unfairly prejudicial. And to the extent one of the dissenting opinions seems to suggest that the federal cases on rule 403 balancing are inconsistent with our own precedent, we disagree. We see no meaningful difference between the text of rule 403 and that of the equivalent federal rule. Nor do we see any difference in the standards articulated by courts applying these rules.

Thus, in light of the statutory text, our precedent applying it, and federal cases doing likewise with a nearly identical federal rule, we cannot say that the district court abused its discretion in determining that the probative value of the Wolfgirl evidence outweighed its prejudicial value.

Before moving to the next issue, we note that a casual reader might misinterpret references to the length of the exhibit as 50 "page[s]." We should emphasize that each "page" is a screenshot of the conversation and images displayed on the limited

---

[42] *Chambers, supra* note 26, 642 F.3d at 596.

[43] See, also, *U.S. v. Wallace*, 607 Fed. Appx. 25 (2d Cir. 2015) (admitting magazine cover of women dressed as young girls to show sexual interest in young girls and admitting files depicting bestiality and adult pornography account to show identity); *U.S. v. Keith*, 440 Fed. Appx. 503 (7th Cir. 2011) (showing jury 32 uncharged images of child pornography); *U.S. v. Sumner*, 522 Fed. Appx. 806 (11th Cir. 2013) (admitting 85 sexually suggestive photographs to show intent).

space of a cell phone's screen. And three of those pages display only a "Failed to Load" message. So, while the number of words on such a page varies considerably, the other 47 pages of the exhibit total about 2,529 words—or an average of only about 53 words per page.

### (d) Limiting Instruction

The court instructed the jury to consider the evidence of the Wolfgirl conversation for the limited purpose of motive and absence of mistake or accident as to the elements of count 1. Before the jury heard any of the evidence concerning the Wolfgirl conversation, the court instructed the jury on the limiting instruction. Thomas did not raise an issue with the limiting instruction on appeal.

## 2. Sufficiency of Evidence

The crime of enticement by electronic communication device, in relevant part, consists of the following:

A person commits the offense of enticement by electronic communication device if he or she is nineteen years of age or over and knowingly and intentionally utilizes an electronic communication device to contact a child under sixteen years of age or a peace officer who is believed by such person to be a child under sixteen years of age and in so doing:

(a) Uses or transmits any indecent, lewd, lascivious, or obscene language, writing, or sound [or]

. . . .

(c) Offers or solicits any indecent, lewd, or lascivious act.[44]

Thomas argues that "[t]he sole use of the words 'to kiss or eat you out' cannot be . . . lewd, lascivious or obscene . . ." as a matter of law.[45] He contends that these words do not conjure

---

[44] § 28-833(1).

[45] Brief for appellant at 20.

up repugnant sexual images. Thomas does not contend that the evidence was insufficient to support a conviction on count 1 for the remaining elements of the crime. Therefore, we address the sufficiency of the evidence only as to whether his writing or solicitation was "indecent, lewd, lascivious, or obscene," in violation of § 28-833.

Case law instructs us that the term of art "indecent, lewd, lascivious, or obscene," when used by the Legislature, is a context-based question of fact. In *State v. Kass*,[46] we analyzed a constitutional challenge to the same language. We identified the rule from *State v. Kipf*[47] as the clear line to apply to narrow the reach of "indecent, lewd, lascivious, or obscene" in § 28-833. We held in *Kipf* that "the phrase in question is the use of language which conjures up repugnant sexual images."[48] We further explained that the context of the language aids to determine whether the language is repugnant or not. There, we reasoned that coitus between two consenting adults as an expression of love is not repugnant and does not conjure up repugnant images. However, we further reasoned that coitus performed as violence is repugnant, as much as it is criminal. Moreover, because of the known or unknown identity of the other actual or would-be participant, an otherwise natural and fulfilling sexual act could be repugnant.[49]

In this case, the context of the sexual language conjured repugnant sexual images when exchanged between an adult and a 14-year-old child. Although Thomas' language, if aimed to a consenting adult, would not conjure up repugnant sexual images, here it was addressed to a person claiming to be 14 years old. As we said in *Kipf*, the known identity of the other would-be participant can turn an otherwise natural sexual act repugnant. Viewing the foregoing in the light most favorable

---

[46] *State v. Kass*, 281 Neb. 892, 799 N.W.2d 680 (2011).

[47] *State v. Kipf*, 234 Neb. 227, 450 N.W.2d 397 (1990).

[48] *Id*. at 235, 450 N.W.2d at 405.

[49] See *Kipf, supra* note 47.

to the prosecution, any rational trier of fact could have found that the solicitation in writing or otherwise by an adult to perform oral sex on a person whom the adult believed to be a 14-year-old child would conjure up repugnant sexual images. Therefore, there was sufficient evidence for the jury to find that Thomas used or transmitted indecent, lewd, lascivious, or obscene writing or offered or solicited any indecent, lewd, or lascivious act.

## VI. CONCLUSION

We conclude that the district court did not abuse its discretion in admitting the rule 404 evidence of the Wolfgirl conversation as to motive and absence of mistake or accident. The evidence was sufficient for a jury to find the writing or solicitation "indecent, lewd, lascivious, or obscene" to support the conviction. We affirm the judgment of the district court.

Affirmed.

Heavican, C.J., dissenting.

I respectfully dissent. In my view, the majority in this case underestimated the danger of unfair prejudice resulting from the admission of the entirety of exhibit 11, otherwise referred to as the "Wolfgirl evidence." The majority suggests that Thomas failed to both specifically assign and argue for redaction of the unfairly prejudicial photographs and failed to assign and argue alternatively that the court should have allowed only the relevant portions of the Wolfgirl evidence. As a result, the majority contends that we cannot review such error. I respectfully disagree and suggest that our analysis of the Wolfgirl evidence involves a review of the district court's decision for plain error.

Where a party fails to comply with the court rules requiring a separate section setting forth the assignments of error, an appellate court may proceed as though the party failed to file a brief entirely or, alternatively, may examine the proceedings

for plain error.[1] The decision to proceed on plain error is at the discretion of the appellate court.[2] Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[3]

In this case, the fairness of the judicial process is called into question by the introduction of unfairly prejudicial material, such as photographs of Thomas' genitalia, that bears little relevance to the instant case. Therefore, a review for plain error is not only appropriate, but necessary. With our judicial role as an appellate court clearly defined, and our standard of review in mind, we turn to the facts of this case.

For purposes of this dissent, only a brief review of the facts is needed. Thomas placed an online advertisement seeking to perform oral sex on a female (no age specified). A law enforcement officer, representing himself electronically as a decoy 14-year-old girl, responded to the advertisement and asked if Thomas would be interested in "hanging with someone younger." After learning the purported age of the decoy, Thomas asked, "If we did meet up what would you like to happen? Me just eating you out or more?" Thomas ultimately pursued a plan to meet the decoy; upon arriving at the planned meeting place, Thomas was instead met by law enforcement officers.

Following Thomas' arrest, he permitted law enforcement to search his cellular telephone. During the course of the search, investigators located another sexually explicit conversation that Thomas had engaged in, with an underage female identified herein by the name "Wolfgirl." At trial, the State sought to produce the Wolfgirl evidence pursuant to Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404 (Reissue 2016), to show "motive,

---

[1] See *In re Interest of Justine J. & Sylissa J.*, 288 Neb. 607, 849 N.W.2d 509 (2014).

[2] *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014).

[3] *Id.*

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Thomas was charged with two counts. Count 1 alleged a violation of Neb. Rev. Stat. § 28-833 (Reissue 2016) (enticement by electronic communication device), and count 2 alleged a violation of Neb. Rev. Stat. § 28-320.02 (Reissue 2016) (use of electronic communication device to knowingly entice to engage in illegal sex act). The district court rejected Thomas' argument that the text messages with Wolfgirl lacked relevance and were unfairly prejudicial. The court concluded that the Wolfgirl conversation, ultimately entered as exhibit 11, would be admissible to show motive or absence of mistake or accident, but only as to count 1.

I concur with the majority's conclusion that the evidence was admissible under rule 404 to show motive or absence of mistake. But I take issue with the majority's determination that entering the entirety of exhibit 11 could survive scrutiny under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016).

Rule 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In my opinion, most of exhibit 11 was a "needless presentation of cumulative evidence" and its "probative value [was] substantially outweighed by the danger of unfair prejudice [and] confusion of the issues."

## CUMULATIVE EVIDENCE

The State presented evidence that Thomas was 19 years of age or older, and it entered two exhibits each consisting of two pages of text messages between Thomas and the decoy. Combined with the testimony of law enforcement officers, that evidence was all that was needed for a reasonable juror to reach the conclusion that Thomas had violated either § 28-833 or § 28-320.02 or both. However, the State sought

and was granted permission to introduce the uncharged Wolfgirl evidence.

In both quantity (compared to the two two-page exhibits) and substance, the 50 pages of exhibit 11 dwarf the State's direct evidence in this case. Exhibit 11 is laced with sexually explicit content, much of which is set out in detail in Justice Miller-Lerman's dissent. It is intermixed with still images of Thomas' genitalia. The images are unmistakably stamped with "play" button icons, indicating the images are merely stills from videos.

The images were not made available to the trial court judge until immediately before trial. The State admitted that the videos behind the images would rise to the level of a danger of unfair prejudice, but argued that the still images themselves did not. But the images with the play button icon affixed thereon left to the imagination of each juror further graphic, indecent, and repugnant behavior. The images were needlessly cumulative and can best be described as overkill (and unfairly prejudicial as noted below).

Further, the text of exhibit 11 in its entirety contains more than one example of Thomas' referencing sexual gratification, as well as a lengthy discussion of Wolfgirl's fantasy life. Wolfgirl's fantasy life is arguably lacking in any relevance to either count and is again needlessly cumulative.

## DANGER OF UNFAIR PREJUDICE

In its rule 403 balancing, the majority relies on *U.S. v. Chambers*,[4] a case from the U.S. Court of Appeals for the Seventh Circuit. As the majority notes, in *Chambers*, the Seventh Circuit said, "Sexual abuse of a child or the attempt thereof is a disgusting crime and any evidence of it is no doubt unfavorable to the defendant, but here it was not unfairly prejudicial."[5] I agree with the Seventh Circuit's sentiments as a

---

[4] *U.S. v. Chambers*, 642 F.3d 588 (7th Cir. 2011).

[5] *Id*. at 596.

general proposition and note that by the court's very language, prejudice is determined on a case-by-case analysis. Beyond that, the majority's reliance on the persuasive authority of the federal circuit courts of appeal is misplaced, as we have binding authority and a clear balancing test.[6]

In *State v. Kirksey*,[7] we discussed the balancing test required when a court is faced with unfairly prejudicial evidence of prior acts. We held that the district court committed prejudicial error during a murder trial when it admitted evidence of a previous homicide for which the defendant had been acquitted. *Kirksey* sets out the following balancing test for a rule 403 review by an appellate court:

> In reviewing trial court rulings which have admitted evidence of other crimes, an appellate court considers "(1) whether the evidence was relevant, (2) whether the evidence had a proper purpose, (3) whether the probative value of the evidence outweighed its potential for unfair prejudice, and (4) whether the trial court, if requested, instructed the jury to consider the evidence only for the purpose for which it was admitted."[8]

*Relevancy.*

The State argued that Thomas' conversations with Wolfgirl were "for sexual gratification purposes and that . . . goes to the relevance of it which is the motive, [or] absence of mistake or accident." The State further argued that the Wolfgirl evidence was "relevant both for Counts 1 and 2 in their entirety."

The district court apparently agreed with the State's theory of motive (sexual gratification), but only as to count 1, § 28-833. Justice Miller-Lerman argues, in her dissent as to motive, that the State added an element to § 28-833 that clearly does not exist. She goes on to note, however, that the Wolfgirl

---

[6] See *State v. Kirksey*, 254 Neb. 162, 575 N.W.2d 377 (1998).

[7] *Id.*

[8] *Id.* at 179, 575 N.W.2d at 390.

evidence could have been relevant to count 2, § 28-320.02. I agree that the relevance of motive for the purpose of § 28-833 is more attenuated than the relevance of motive for the purpose of § 28-320.02.

In any event, motive for either or both § 28-833 and § 28-320.02 could have been demonstrated by introducing an edited version of exhibit 11. Several pages of text (for example, the January 15, 2017, texts exchanged from 9:50 to 10:25 p.m.) demonstrating the real age of Wolfgirl, Thomas' seeking photographs of Wolfgirl, and his interest in sexual gratification would have accomplished the State's needs.

The majority contends that admission of the whole exhibit is proper where one part of the exhibit is admissible. However, I do not believe that *State v. Huston*[9] or *State v. Merrill*[10] stands, or should stand, for the proposition that unfairly prejudicial evidence should be admitted over the protections of rule 403 because some minor interconnected piece of the nonprejudicial evidence is admissible. Such a holding would cut against the protections of rule 403 and render the protection void altogether.

*Proper Purpose and Unfair Prejudice.*

As Justice Miller-Lerman explains in her dissent, while a demonstration of motive is a proper purpose, the probative value of the entirety of exhibit 11 was outweighed by its danger of unfair prejudice. As discussed above, exhibit 11 overwhelmed the direct evidence in this case. The evidence in exhibit 11 is more indecent, more lewd, more lascivious, and more obscene than the direct evidence of the charged crimes, and it is a communication with an actual 13-year-old girl. In my opinion, exhibit 11 made it highly likely that the jury was really finding Thomas guilty of the uncharged Wolfgirl crimes, as well as the two counts at issue.

---

[9] *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013).

[10] *State v. Merrill*, 252 Neb. 736, 566 N.W.2d 742 (1997).

*Jury Instructions.*

The fourth element of the *Kirksey* balancing test is "'whether the trial court, if requested, instructed the jury to consider the evidence only for the purpose for which it was admitted.'"[11] In this case, the trial court did give the jury such an instruction. But, as in *Kirksey*, "[w]here the probative value of evidence is outweighed by its potential for unfair prejudice, its admission is error even if an appropriate limiting instruction is given."[12]

## DANGER OF CONFUSION
## OF ISSUES

Because there were two counts in this case, in its instructions to the jury, the trial court, by necessity, needed to distinguish between count 1 and count 2 by pointing out that the Wolfgirl evidence was to be used only for the limited purpose of showing motive and absence of mistake, and only as to count 1. Our case law is clear that jurors are presumed to have followed instructions: "Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict."[13]

But admitting evidence that is not direct evidence of the charged counts, and is used for the purpose of one count but not another, requires the court to give complicated and elaborate jury instructions that further risk the probative value's being substantially outweighed by the danger of confusion of the issues by the jury. Because there are two counts in this case, the danger of jury confusion is considerably increased when coupled with the danger of unfair prejudice and the cumulative nature of exhibit 11.

That confusion is demonstrated by the questions asked by the jury in this case and the court's responses to those questions:

---

[11] See *State v. Kirksey, supra* note 6, 254 Neb. at 179, 575 N.W.2d at 390.

[12] *Id.* at 181, 575 N.W.2d at 391.

[13] *State v. Lester*, 295 Neb. 878, 899, 898 N.W.2d 299, 316 (2017).

Question #1

May we request and get transcripts of the interview of . . . Thomas by [law enforcement]?

Answer to Question #1

There will be no transcripts provided.

. . . .

Question #2

Does Count 2 hinge on the guilt of Count 1?

Answer to Question #2

Please refer to paragraph B of Instruction Number 4.

Question #3

What happens if we can't come to a unanimous verdict on Count 1, Count 2 or both?

Answer to Question #3

You are instructed to continue your deliberations.

(Emphasis omitted.)

Likewise, the State's closing argument appears to blur the distinction between the direct evidence of the charged crimes (dialogue with law enforcement agent pretending to be juvenile 14 years old or younger) and the uncharged exhibit 11 evidence (dialogue with actual 13-year-old), hence adding to the confusion of issues.

## CONCLUSION

Had the Wolfgirl evidence been given to the jury without the images included, or more ideally had only a page or two of the Wolfgirl transcripts been admitted, I would join the majority's opinion. But that is not what happened in this case. In my opinion, the district court did not just abuse its discretion, it committed plain error in admitting exhibit 11 in its entirety.

As admitted, exhibit 11's probative value was substantially outweighed by the danger of unfair prejudice, it was misleading to the jury, and it was needlessly cumulative. Indeed, if a more careful parsing of the rule 404 evidence in this case is not required, rule 403 becomes largely meaningless. I would reverse, and remand.

Miller-Lerman, J., dissenting.

I respectfully dissent.

In my view, exhibit 11 was not admitted into evidence for a proper purpose, and even if it was admissible, it should have been excluded because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016). Exhibit 11 is a textbook example of propensity evidence, which should not have been admitted as to count 1 and resulted in unfair prejudice. Its obvious effect was to poison the jurors against Thomas and distract them from their real task of weighing solely the evidence of the crime charged in count 1 in this case. Although Thomas would remain convicted of count 2, I would reverse, and remand for a new trial on count 1.

Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404(2) (Reissue 2016), provides in part that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith." This is commonly referred to as "propensity evidence." We have previously noted that "propensity evidence may lead a jury to convict, not because the jury is certain the defendant is guilty of the charged crime, but because it has determined the defendant is '"a bad person [who] deserves punishment,"' whether or not the crime was proved beyond a reasonable doubt." *State v. Oldson*, 293 Neb. 718, 744-45, 884 N.W.2d 10, 37 (2016).

We have observed:

> The admission of other acts evidence presents a special danger of confusion of the issues and undue prejudice. Not only might the jury infer action based on the defendant's general lawbreaking character, but the jury might subconsciously penalize the defendant for the proven misdeeds. In other words, such evidence of other acts might encourage a "preventive conviction even if [the defendant] should happen to be innocent momentarily."

*Id*. at 746-47, 884 N.W.2d at 39.

The hazard of admitting propensity evidence is that it results in unfair prejudice.

Unfair prejudice means an undue tendency to suggest a decision based on an improper basis. Unfair prejudice speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged, commonly on an emotional basis. When considering whether evidence of other acts is unfairly prejudicial, we consider whether the evidence tends to make conviction of the defendant more probable for an incorrect reason.

*Id*. at 751-52, 884 N.W.2d at 41-42.

Count 1 alleges a violation of Neb. Rev. Stat. § 28-833(1) (Reissue 2016), which generally prohibits use of an electronic device to transmit indecent language or visual depictions of sexually explicit conduct or to solicit a lewd act by an individual over 19 years of age addressed to a child under 16 years of age or a police officer believed to be such a child. It is undisputed that the police officer, posing as an underage girl named "Logan," texted Thomas, age 20, "Im 14 almost 15," and Thomas sent messages to "Logan."

The two text messages at issue in count 1 consisted of no graphics and contained these words in their entirety: (1) "If we did meet up what would you like to happen? Me just eating you out or more?" and (2) "The only thing I want to happen for now is maybe some kissing and eating you out that's all."

Perhaps lacking confidence in its case, the State offered and the court received exhibit 11 as to count 1. Exhibit 11 reflects an entirely different uncharged matter consisting of 50 pages of photographs and text messages exchanged in a chat room between Thomas and a 13-year-old girl, who went by the name "Wolfgirl." The court found the "Wolfgirl" evidence inadmissible as to count 2, presumably because count 2 required a finding that Thomas intended to engage in criminal sexual activity with "Logan," and there is no indication in the

"Wolfgirl" evidence that Thomas was trying to actually meet with or engage in sexual activity with "Wolfgirl."

With apologies to the reader, and because the majority merely describes it as a "50-page conversation, containing sexually explicit photographs and language," a sample of exhibit 11 must be briefly described to illustrate how its "probative value" was substantially outweighed by its unfair prejudice and how it confused the issues and, I believe, mislead the jury to convict Thomas of count 1 on an improper basis.

The direct relevant evidence of count 1 consisted of the two "eating you out" statements quoted above, whereas exhibit 11 was voluminous—50 pages of text messages and graphics. The graphics include no less than half a dozen photographs of penises, a scrotum, a man and woman engaged in sexual intercourse, girls in bikini swimsuits, and a cartoon penis telling a joke. A small sample of the text in merely the first dozen pages of the 50 pages of exhibit 11 includes the following:

• "[W]hat turns you on[?]"
• "I'd love to pic [sic] you up and pound deep into your pussy as I kiss you[.]"
• "Would you like to see how excited my cock is for that?"
• "Mmm all seven inches ready to pound into you[.]"
• "Grinds against your ass and smacks it as I lean forward my cock head rubbing up and down your slit as I kiss and nibble on your neck my hands tweaking your nipples[.]"
• "I use you[r] hair as a handle and pound into you rubbing your clit[.]"
• "[A]re you close to cumming for daddy[?]"
• "Mmm slowly working my thumbs into you[r] ass as I pound into you slowly spreading it and then fingering it as I smack and massage your ass[.]"
• "Slowly kiss my way down to your pussy and then slowly start to lick up the juices leaking from your pussy[.]"

The texts after page 12 up to page 50 are similar. However, the later portions of exhibit 11 contain an exchange of texts describing a fantasy in which Thomas and Wolfgirl pretend

to be wolves, mate, and produce offspring and Thomas' wolf character has sex with his young wolf daughter.

Exhibit 11, the unrelated chat room exchange with an actual girl, was obviously intended to inflame the jury and show that Thomas was a "bad person" with a propensity to commit crimes, see rule 404, so he must be guilty in this case. Why else submit 50 pages of graphic sexual material to establish the undisputed fact that Thomas sent two texts to a decoy saying "eating you out"? When it comes to influence, a picture from an unrelated matter is worth a thousand words.

I do not agree with the majority that the exhibit was admissible for a proper purpose. I am puzzled how the majority could reach the conclusion that exhibit 11 was admissible consistent with evidentiary jurisprudence regarding "motive" and "absence of mistake" under rule 404(2), not to mention minimum due process.

I believe the Wolfgirl material was not admissible as to count 1 to show motive. I do not think the Seventh Circuit cases relied on by the majority are persuasive in this case, because those cases involved charges that were more similar to count 2 in this case and required a showing that the defendant communicated with the decoy with the motive of engaging in criminal sexual activity with an underage person. Thus, the fact that the defendant had previously engaged in sex with a 14-year-old girl, *U.S. v. Zahursky*, 580 F.3d 515 (7th Cir. 2009), or had sex with his ex-girlfriend's 14-year-old child, *U.S. Chambers*, 642 F.3d 588 (7th Cir. 2011), could show motive to engage in criminal sexual conduct such as was charged in count 2 herein. But the same type of motive does not apply to count 1, which is the only charge to which the court admitted exhibit 11 in this case.

Also with regard to motive as a proper purpose for admission of the Wolfgirl evidence, I think that relying on motive as a proper purpose in a prosecution based on § 28-833 inadvertently adds an element to the charge that is not required under the statute. As I read § 28-833, it requires a showing that

the defendant knowingly and intentionally communicated with either a person the defendant knew to be an underage person or a decoy the defendant believed to be an underage person and that the content of the communication was of one of the types listed in the statute. As charged in count 1 in the present case, the communication needed to be one that either "use[d] . . . indecent, lewd, lascivious, or obscene language" or "offer[ed] or solicit[ed] any indecent, lewd, or lascivious act." Nothing in the statute requires a determination of the defendant's purpose or motive in making such a communication. This is in contrast to other statutes defining sex offenses, such as offenses requiring a finding of "[s]exual contact," which is defined in Neb. Rev. Stat. § 28-318(5) (Reissue 2016) to "include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party." There is nothing in § 28-833 requiring that the communication be for the purpose of sexual arousal or gratification or any other specific purpose, and I therefore do not think a defendant's motive in sending a prohibited communication is relevant under § 28-833.

As relevant to the charges in this case, I think motive could be relevant to a prosecution under Neb. Rev. Stat. § 28-320.02 (Reissue 2016) as charged in count 2, which requires a showing that the communication was intended to solicit, coax, entice, or lure the other person to actually engage in an act that would constitute one of the specified sex offenses. Motive therefore could be relevant under § 28-320.02 to show that the defendant's purpose was to engage in such activity for the purpose of sexual arousal or gratification. However, the district court did not admit the Wolfgirl evidence for the charge under § 28-320.02, as charged in count 2, and instead instructed the jury to consider it only with respect to the charge under § 28-833 as charged in count 1.

While the Wolfgirl evidence is more attenuated as to the charge against Thomas under § 28-320.02 than as to the charge under § 28-833, it is not because "motive" is more relevant

under § 28-833 than it is under § 28-320.02; instead, as discussed above, the opposite is true and motive is not relevant under § 28-833 but may be relevant under § 28-320.02. The reason I think the Wolfgirl evidence is more attenuated as to the charge under § 28-320.02, and the reason I think the district court determined that the Wolfgirl evidence was not admissible as to the charge under § 28-320.02, is because in the Wolfgirl conversations, there is no indication that Thomas was attempting to arrange a meeting with Wolfgirl or to actually engage with Wolfgirl in an act that would constitute one of the specified sex offenses. Therefore, the Wolfgirl evidence was not relevant to Thomas' motive in his communications with "Logan" in connection with the charge under § 28-320.02. Because the district court admitted the Wolfgirl evidence only as to the charge under § 28-833, count 1, and because motive is not relevant to a charge under § 28-833, I do not think that motive was a proper purpose for admission under rule 404 in this case.

I believe the Wolfgirl evidence was not admissible to show absence of mistake. What is the relevance of the Wolfgirl evidence, which involved an actual girl under 16 years of age, to the issue of whether Thomas believed the officer, pretending to be the underage "Logan," was an actual child? It is not a mistake to disbelieve a falsehood. Under § 28-833, there is an important distinction between cases where a defendant knows the recipient to be a child under 16 years of age and cases where a defendant mistakenly believes that the recipient, who is actually an adult peace officer, is a child under 16 years of age. That distinction is particularly important when evidence involving one type of recipient, i.e., Wolfgirl—an actual girl—is offered to prove mens rea in a case involving the other type of recipient, i.e., a police decoy. Compare *U.S. v. Zahursky*, 580 F.3d 515 (7th Cir. 2009), in which the "other acts" evidence included the defendant's statement to a different girl that the victim of the charged conduct was 14 years old and in which said "other acts" evidence was hence

relevant to show that the defendant was not mistaken as to the victim's age.

Even if the 50-page exhibit 11 were admissible, its probative value was far outweighed by the prejudice which occurred by admitting it. See rule 403. Given the nature of exhibit 11, in my view, exhibit 11 tended to make "conviction of [Thomas] more probable for an incorrect reason." See *State v. Oldson*, 293 Neb. 718, 752, 884 N.W.2d 10, 42 (2016). In his separate dissent, Chief Justice Heavican articulately sets forth the reasons why admission of the Wolfgirl evidence presents a danger of unfair prejudice that substantially outweighs the probative value of the evidence. I think that because of the extreme nature of the Wolfgirl evidence relative to the facts related to "Logan" that are the basis for the charges herein, there was an unacceptable risk that jurors would focus more on the Wolfgirl evidence than the evidence related to "Logan," therefore posing a high danger of conviction on an improper basis, that is, a conviction based on Thomas' communications with Wolfgirl rather than on his communications with "Logan." I believe that it was an abuse of discretion to admit exhibit 11 and that such ruling constituted reversible error.

Although it was unfair to convict Thomas of count 1 based on propensity evidence and unkind to unnecessarily expose the jurors to the contents of the graphic sexually explicit 50-page exhibit 11, following reversal of Thomas' conviction on count 1, he would remain convicted of count 2, and double jeopardy does not prevent a retrial of Thomas on count 1 based on admissible evidence. See *Lockhart v. Nelson*, 488 U.S. 33, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988). Our job is to adhere to the rules of evidence and to guard due process even when it may temporarily benefit a defendant.