STATE OF NEBRASKA, APPELLEE, V. MICHAEL STEWART,
APPELLANT.

363 N.W.2d 368

Filed February 22, 1985.   No. 84-016.

Dennis R. Keefe, Lancaster County Public Defender, and Michael D. Gooch, for appellant.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

A jury in the district court for Lancaster County found Michael Stewart guilty of (1) assault in the second degree, Neb. Rev. Stat. § 28-309(1)(a) (Reissue 1979), and (2) use of a deadly weapon to commit a felony, Neb. Rev. Stat. § 28-1205(1) (Reissue 1979). The district court sentenced Stewart to a term of imprisonment of 14 months to 4 years for the assault charge and a term of 1 to 2 years for the weapon charge. Sentence on the weapon charge ran consecutively to the assault sentence.

Lily "Rings" Heydorn shared an apartment with Stewart and his cousin, Ray Webb. Stewart was accustomed to carrying a Buck hunting knife in a sheath attached to his belt. The Buck hunting knife resembles an oversized pocketknife with a 3- to 4-inch blade. Stewart frequently and instructionally demonstrated to Rings "how fast he could open the knife" with "just one hand" by "flipping the wrist."

At Rings' apartment on November 25, 1982, Thanksgiving Day, Rings, Webb, and Stewart gathered for Thanksgiving dinner with Rings' mother, Bernice Heydorn, and Rings' brother, Mark. Throughout Thanksgiving Day, Stewart had been drinking heavily. After Thanksgiving dinner Bernice, Webb, and Stewart watched TV in the living room, while Rings and Mark remained in the dining room. Stewart continued drinking Jack Daniels whiskey. Around midnight, Stewart and Webb engaged in a wrestling match in the living room. Stewart was wearing the sheath containing his Buck knife. Bernice, present in the living room, saw Stewart shove Webb "pretty hard" down on the davenport and tell Webb to "sit down and shut up." According to Bernice, Webb was "pretty steamed" and responded, "I don't have to take this." Webb rose from the davenport only to have his leather vest torn off by Stewart. The wrestling match resumed, and a telephone was knocked "off the hook" in "quite a scuffle," according to Bernice. Webb and Stewart tried to strike each other and became locked in each other's arms. The wrestling match concluded with Stewart holding the blood-covered Buck knife with his right hand and lying on the davenport while yelling at Webb, "[C]ome on, you S.O.B., I'll cut you again." Webb, bleeding, was leaning over the davenport and then collapsed on the floor. Webb sustained a horizontal knife wound on his side in line with the rib cage, slightly forward from his left arm. Bernice telephoned the police and an ambulance. The police arrived approximately 5 minutes after Bernice's call.

After the police arrived, officers found Stewart's Buck knife near the scene of the scuffle and questioned Stewart about the incident in which Webb was wounded. In the course of police investigation at Rings' residence and at the police department, Stewart gave varied accounts of the incident. Admissibility of

Stewart's statements to the police is not an issue. According to officers, Stewart told the police that "Webb had a knife in his right hand and was coming toward" Stewart. In an attempt to disarm Webb, Stewart twisted Webb's right arm behind his back, and it was then that Webb was "possibly stabbed." In another version of the incident Stewart told police that Webb "had fallen on the knife." At Rings' house police later found a kitchen knife with a 6- to 7-inch blade which Stewart maintained had been used in Webb's attack on him. During the trial, Stewart's counsel extensively cross-examined officers about the possibility of Stewart's intoxication when the police arrived at Rings' residence after Webb was wounded.

Shortly before Brenda Gunn, a State's witness, testified during Stewart's trial, counsel met with the court in chambers. The prosecutor gave a detailed description of Gunn's prospective testimony, namely, on departing a bar in Omaha Stewart had stabbed a man because the other man had "flirted" with or tried to "pick up" Stewart's female companion, and in Lincoln Stewart wielded a knife during a fight with one Michael Blocker. Defense counsel gave his views about relevancy of the two incidents but requested no action from the trial court except an examination of Stewart's appeal from a previous Douglas County conviction for assault. See *State v. Stewart*, 209 Neb. 719, 310 N.W.2d 706 (1981). After a short recess and out of the presence of the jury, the court stated to counsel that Gunn would be permitted to testify about the Omaha and Blocker incidents "for the limited purpose of showing intent or absence of accident." In reference to Rule 403 of the Nebraska Evidence Rules (Neb. Rev. Stat. § 27-403 (Reissue 1979)) and Gunn's prospective testimony, the trial court stated that "the probative value does outweigh any prejudicial effect."

As previously indicated by the prosecutor, Gunn testified about two incidents involving Stewart and his use of a knife. According to Gunn, on several unspecified occasions between the first of July and the end of September in 1983, Stewart had told Gunn about the first incident, a fracas which occurred when an individual attempted to "pick up" Stewart's female companion as Stewart and his companion were leaving an Omaha bar. Stewart became "angry and got mad," and with a

knife cut the interloper. A date for the Omaha fracas was not established. Stewart's counsel made no objection based on relevance throughout the direct examination of Gunn except an objection to a question about Stewart's minimum daily consumption of alcoholic beverages. On cross-examination of Gunn, Stewart's counsel unsuccessfully tried to obtain a concession that Stewart stated he was intoxicated during the Omaha fracas or had consumed such quantities of alcohol that the only reasonable inference was Stewart's intoxication during the incident.

Gunn then testified about a second incident which occurred in her presence and involved Michael Blocker and Stewart. On an evening in early July 1983, after he had drunk a great deal of alcohol, Stewart, en route to a liquor store, encountered and argued with Blocker. The argument subsided. Later, Stewart found Blocker seated on a porch of a nearby residence of one of Gunn's friends. An additional affray ensued, during which Blocker and Stewart struck each other, with Blocker getting the best of the exchange. Gunn and another woman intervened and pulled Blocker from Stewart, who entered the house and reappeared carrying a knife. When Stewart, brandishing the knife, was approximately 2 feet from Blocker, the two women disarmed Stewart while Blocker ran away.

After the State rested its case Stewart did not present any witnesses and did not testify.

Among the instructions given by the court was NJI 14.11A regarding the limited and proper use or consideration of Stewart's other acts in arriving at a verdict. Also, with Stewart's approval the court instructed the jury on Stewart's theories of defense, namely, self-defense (NJI 14.33) and intoxication (NJI 14.31). The jury found Stewart guilty of the charges.

Stewart contends that the trial court committed reversible error by admitting the testimony of Brenda Gunn about Stewart's "other acts" involving a knife and, further, by instructing the jury concerning such "other acts." As additional grounds claimed for reversal, Stewart contends that the two-count information, that is, the charges of assault and use of a weapon during the commission of the assault, have twice put Stewart in jeopardy for the same offense, contrary to the

Constitutions, state and federal. See, Neb. Const. art. I, § 12; U.S. Const. amend. V. Finally, Stewart contends that the evidence is insufficient to sustain his conviction.

We have previously dispelled the erroneous notion that Rule 404(2) of the Nebraska Evidence Rules (Neb. Rev. Stat. § 27-404(2) (Reissue 1979)) contains pigeonholes for admission of evidence pertaining to "other acts." Rule 404(2) of the Nebraska Evidence Rules is an inclusionary rule permitting the use of relevant, specific acts for all purposes except to prove character of a person in order to show that such person acted in conformity with character. Thus, Rule 404(2) permits evidence of other acts if such acts are relevant for any purpose other than to show a defendant's propensity or disposition to commit the crime charged. *State v. Craig, ante* p. 70, 361 N.W.2d 206 (1985).

Intent is the state of mind operative at the time of an action. *State v. Craig, supra.*

Proof of other acts admissible under Rule 404(2) is not restricted to those acts occurring before the event for which a defendant is prosecuted. Proof of other acts is admissible even if such acts occurred after the offense charged against the defendant. *United States v. Arroyo-Angulo,* 580 F.2d 1137 (2d Cir. 1978) (misconduct committed 9 months after the crime charged in the indictment is relevant).

In Stewart's case the other acts were not offered to show a propensity or disposition to commit an assault on Webb, that is, to prove Stewart's character in order to show that he acted in conformity with his character. Rather, the other acts, as testified by Gunn, were relevant and tended to negative Stewart's assertion that Webb was accidentally wounded as a result of Webb's falling on the knife. Further, Stewart told police that Webb was holding a knife in his right hand and, in an attempt to disarm Webb, Stewart twisted Webb's right arm backward, thereby accidentally inflicting the knife wound on Webb's left side. Such a contortionistic exhibition strains the most vivid imagination and expands the confines of credulity. Nevertheless, the other acts testified by Gunn tend to eliminate accident as Stewart's explanation for the wound sustained by Webb. The other acts described by Gunn had additional

probative value in showing Stewart's intent, his state of mind, and were relevant to demonstrate that Stewart's conduct and actions toward Webb were accompanied by criminal intent rather than a justified protective intent existing in self-defense. Generally, other acts may be used to refute the accused's claim of self-defense. See, *State v. Jenkins*, 158 Conn. 149, 256 A.2d 223 (1969); *Commonwealth v. Krolak*, 164 Pa. Super. 288, 64 A.2d 522 (1949). Stewart's other acts with a knife tended to counter his contention that at the time of the offense he lacked the requisite criminal intent due to intoxication. See *United States v. Smith*, 552 F.2d 257 (8th Cir. 1977). Under the circumstances Gunn's testimony about other acts involving Stewart and a knife was relevant. We agree with the trial court that the probative value of Stewart's other acts outweighs the danger of unfair prejudice, confusion of the issues, or the possibility of misleading the jury. See Rule 403, Nebraska Evidence Rules. The evidence about which Stewart complains was admissible.

In considering assignments of error claimed in the reception of evidence, we must examine the trial record made, not the record counsel believes he has made or wishes in retrospect he had made. Stewart's attorney did not object on the basis of relevancy when the evidence now assailed was adduced. " 'A defendant cannot predicate error on the admission of evidence to which no objection was made at the time the evidence was adduced.' " *State v. Archbold*, 217 Neb. 345, 351, 350 N.W.2d 500, 505 (1984); *State v. Tomrdle*, 214 Neb. 580, 335 N.W.2d 279 (1983). Perhaps in anticipation of an adverse ruling, counsel refrained from objecting lest the jury's attention be directed to prejudicial aspects of incidents which might otherwise be depreciated or minimized as acts of one apparently intoxicated. When Stewart's counsel was forewarned about Gunn's testimony but did not object to that witness' testimony, absence of an objection appears to have been a matter of trial strategy, a matter on which we will not speculate. *State v. Archbold, supra.* Under the circumstances, with evidence of Stewart's other acts before the jury, the instruction on the jury's use or consideration of such evidence was proper.

As acknowledged by Stewart's attorney during oral

argument, this court has already addressed and disposed of Stewart's assignment of error based on double jeopardy. The constitutional prohibition against double jeopardy has no application where two separate and distinct crimes are committed as the result of one and the same act, because the constitutional proscription is directed to the identity of the offense and not to the act. Consequently, multiple punishments can be imposed for the same act without violating the double jeopardy provisions of the Constitutions, state and federal, where imposition of the multiple punishments is specifically authorized by state statute. See *State v. Jackson*, 217 Neb. 332, 348 N.W.2d 866 (1984).

Regarding Stewart's final assignment of error, namely, insufficiency of the evidence to sustain his conviction, it has long been the rule in this state that a jury's verdict will be upheld if, reviewing the evidence in the light most favorable to the State, there is sufficient evidence to support the jury's verdict. See *State v. Massey*, 218 Neb. 492, 357 N.W.2d 181 (1984). There is ample evidence to support the jury's verdict in convicting Stewart of both offenses charged against him.

AFFIRMED.