740 N.W.2d 817 (2007)
16 Neb. App. 50
STATE of Nebraska, Appellee,
v.
Michel G. VEATCH, Appellant.
No. A-06-738.
Court of Appeals of Nebraska.
October 23, 2007.
*823 Lyle Joseph Koenig, of Koenig Law Firm, for appellant.
Jon Bruning, Attorney General, and George R. Love, Columbus, for appellee.
IRWIN, SIEVERS, and CASSEL, Judges.
IRWIN, Judge.

I. INTRODUCTION
Michael G. Veatch appeals his conviction and the sentence imposed by the district court for Douglas County on a charge of terroristic threats and the district court's overruling of Veatch's motion for new trial. Veatch challenges a number of the court's evidentiary rulings, the sufficiency of the evidence to support the conviction, and the court's denial of a motion for mistrial. We find that only the issues raised in Veatch's motion for new trial have been timely appealed, and we find no merit to Veatch's assignments of error. We affirm.

II. BACKGROUND
On March 23, 2005, the State filed an information charging Veatch with conspiracy to commit first degree murder. On November 17, the State filed a second amended information charging Veatch instead with terroristic threats. The charge was based on an allegation that Veatch, in October 2003, hired another man, Cameron Warner, to copy or rewrite and deliver a letter that Veatch and his father authored threatening Veatch's wife, who had recently moved out of the marital home and filed for divorce.
On December 8, 2005, the State filed a motion requesting a hearing pursuant to Neb. Evid. R. 404 and a ruling on "the admissibility of evidence concerning other crimes, wrongs or acts committed by [Veatch]." See rule 404(3). On January 5, 2006, the court conducted a hearing on the State's motion. Relevant to this appeal, the State presented evidence concerning statements made by Veatch to Warner in February 2005 that Veatch wanted Warner "to shave her [head] and . . . mess her face up so no one else would want her." On February 8, 2006, the court ruled that the testimony concerning Veatch's statements to Warner was admissible to demonstrate intent, "as well as to counter any argument advanced by [Veatch] that th[e] note was a joke or part of some sort of misunderstanding."
*824 On March 16, 2006, the jury returned a verdict of guilty on the charge of terroristic threats. On March 17, Veatch filed a motion for new trial. On May 18, the court sentenced Veatch. On June 14, the court overruled Veatch's motion for new trial. This appeal followed.

ASSIGNMENTS OF ERROR
Veatch has assigned seven errors on appeal, which we consolidate for discussion to five. First, Veatch asserts that the district court erred in allowing the State to present rule 404 evidence. Second, Veatch asserts that the district court erred in admitting the letter delivered to his wife over Veatch's chain of custody objection. Third, Veatch asserts that the district court erred in excluding certain testimony as alibi evidence. Fourth, Veatch asserts that there was insufficient evidence to support a conviction. Fifth, Veatch asserts that the district court erred in denying Veatch's motion for mistrial during jury deliberations.

IV. ANALYSIS

1. JURISDICTIONAL ISSUE
Before addressing Veatch's assignments of error, we are compelled to resolve a jurisdictional matter that is raised by Veatch's appeal. As noted above, Veatch did not file a timely appeal from the entry of judgment, but, rather, waited to appeal until after the district court ruled on his motion for new trial. As such, we must initially determine what issues have been properly preserved for appellate review.
Before reaching the legal issues presented for review, it is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties. Chase 3000, Inc. v. Nebraska Pub. Serv. Comm., 273 Neb. 133, 728 N.W.2d 560 (2007). See State v. Hudson, 273 Neb. 42, 727 N.W.2d 219 (2007). For an appellate court to acquire jurisdiction of an appeal, there must be a final judgment or final order entered by the tribunal from which the appeal is taken. State v. Hudson, supra.
The appellate jurisdiction of a court is contingent upon timely compliance with constitutional or statutory methods of appeal. State v. Hess, 261 Neb. 368, 622 N.W.2d 891 (2001). Neb.Rev.Stat. § 25-1912(1) (Cum.Supp.2006) specifies that proceedings to obtain appellate review require the filing of a notice of appeal "within thirty days after the entry of . . . judgment." For purposes of appeal in a criminal case, the judgment occurs when the verdict and sentence are rendered by the court. State v. Hess, supra.
A motion for new trial does not toll the running of the 30-day jurisdictional requirement of § 25-1912. State v. Nash, 246 Neb. 1030, 524 N.W.2d 351 (1994), abrogated on other grounds, State v. Thomas, 262 Neb. 985, 637 N.W.2d 632 (2002). The filing of a motion for new trial has no effect on the jurisdictional requirement that in a criminal action, an appealing party must file a notice of appeal within 30 days after the date of judgment. See State v. Flying Hawk, 227 Neb. 878, 420 N.W.2d 323 (1988).
In a criminal case, errors assigned by the defendant based on the overruling of a timely filed motion for new trial may be assigned as error in a properly perfected direct appeal from the judgment. State v. Thomas, supra. In State v. Thomas, the Nebraska Supreme Court expressly disavowed any interpretation of prior cases that suggested that errors based on the overruling of a motion for new trial could not be included in a properly perfected direct appeal. The Supreme Court did *825 not, however, overrule the proposition that a motion for new trial does not toll the time to perfect a direct appeal from the judgment or the proposition that when a defendant appeals only from the overruling of a motion for new trial, the issues on appeal are limited to those properly presented in the motion for new trial. See State v. McCormick and Hall, 246 Neb. 271, 518 N.W.2d 133 (1994), abrogated in part, State v. Thomas, supra.
In the present case, Veatch failed to properly perfect a direct appeal from the judgment. Veatch filed no notice of appeal from the judgment and only appealed from the overruling of his motion for new trial. In such a situation, the issues on appeal are limited to those properly presented in the motion for new trial. See State v. McCormick and Hall, supra. In State v. Thomas, supra, the defendant was granted a new direct appeal in a postconviction proceeding and the Nebraska Supreme Court considered both issues related to the judgment and issues related to the overruling of the defendant's motion for new trial. In the present case, Veatch only appealed from the overruling of his motion for new trial and did not properly perfect a direct appeal. As such, only the issues properly preserved in Veatch's motion for new trial are properly before us on appeal.

2. RULE 404 EVIDENCE
The first issue raised by Veatch is whether the district court erred in finding that the State's proffered evidence concerning Veatch and Warner's contact in February 2005, more than 15 months after the alleged terroristic threat, was admissible under rule 404. We find no abuse of discretion by the court in receiving this testimony.
Rule 404(2) is an inclusionary rule permitting the use of relevant, specific acts for all purposes except to prove character of a person in order to show that such person acted in conformity with character. State v. Stewart, 219 Neb. 347, 363 N.W.2d 368 (1985). Thus, rule 404(2) permits evidence of other acts if such acts are relevant for any purpose other than to show a defendant's propensity or disposition to commit the crime charged. Id. Proof of other acts admissible under rule 404(2) is not restricted to those acts occurring before the event for which a defendant is prosecuted; proof of other acts is admissible even if such acts occurred after the offense charged against the defendant. See id. The admissibility of evidence under rule 404(2) must be determined upon the facts of each case and is within the discretion of the trial court. State v. Wisinski, 268 Neb. 778, 688 N.W.2d 586 (2004).
In the present case, the testimony that Veatch and Warner met and that during that meeting, Veatch told Warner that Veatch wanted his wife's head shaven and her face "messed up," was presented not to show that it was in Veatch's character to terroristically threaten, but to show that he intended to terrorize Veatch's wife and that the previous incidentthe charged incidentwas not a mistake or joke. We find no abuse of discretion by the district court in allowing this testimony.
Additionally, the district court specifically instructed the jury, prior to the testimony's being received, that the testimony was being received for a limited purpose. The receipt of this evidence did not suggest a decision on an improper basis, and its receipt did not violate Neb. Evid. R. 403. See State v. Myers, 15 Neb.App. 308, 726 N.W.2d 198 (2006). As such, we find no merit to this assignment of error.

*826 3. CHAIN OF CUSTODY
The next issue raised by Veatch is whether the district court erred in overruling Veatch's chain of custody objection to the State's proffer of the letter that constituted the terroristic threat. We find that the State adduced evidence that the letter was the same letter allegedly delivered by Warner to Veatch's wife and that the letter was in the custody of law enforcement. Any remaining issues concerning the chain of custody go to the weight of the evidence, not its admissibility.
Where objects pass through several hands before being produced in court, it is necessary to establish a complete chain of evidence, tracing the possession of the object or article to the final custodian; and if one link in the chain is missing, the object may not be introduced in evidence. State v. Tolliver, 268 Neb. 920, 689 N.W.2d 567 (2004). It is elementary that objects which relate to or explain the issues or form a part of a transaction are admissible in evidence only when duly identified and shown to be in substantially the same condition as at the time in issue. Id. Our review concerning the admissibility of this evidence is for an abuse of discretion. See id.
An exhibit is admissible, so far as identity is concerned, when it has been identified as being the same object about which the testimony was given. State v. Sexton, 240 Neb. 466, 482 N.W.2d 567 (1992). It must also be shown to the satisfaction of the trial court that no substantial change has taken place in the exhibit so as to render it misleading. Id. As long as the article can be identified, it is immaterial in how many or in whose hands it has been. Id. Important in determining the chain of custody are the nature of the evidence, the circumstances surrounding its preservation and custody, and the likelihood of intermeddlers' tampering with the object. State v. Tolliver, supra.
Proof that an exhibit remained in the custody of law enforcement officials is sufficient to prove a chain of possession and is sufficient foundation to permit its introduction into evidence. State v. Mather, 264 Neb. 182, 646 N.W.2d 605 (2002). Further, the Nebraska Supreme Court has held that a defendant's challenge to the chain of custody goes to the weight to be given to the evidence presented rather than to the admissibility of that evidence. See State v. Bradley, 236 Neb. 371, 461 N.W.2d 524 (1990).
In this case, Warner identified the letter as the letter he had written at the direction of Veatch. The victim, Veatch's wife, identified the letter as the letter containing a threat that she received. A police officer identified the letter as the letter he received from Veatch's wife when she brought the letter to law enforcement's attention and testified that he had "tagged" it into evidence. There is nothing in the record to indicate that the letter had been tampered with, beyond being tested for fingerprints and for handwriting analysis. We find no abuse of discretion by the district court in receiving the letter into evidence over Veatch's chain of custody objection. This assignment of error is without merit.

4. ALIBI EVIDENCE
The next issue raised by Veatch on appeal is whether the district court erred in excluding certain testimony at trial as alibi evidence proffered without Veatch's having given the State adequate notice of his intent to present alibi evidence. Because we find that the proffered evidence was alibi evidence, we find no merit to Veatch's assertion of error.
*827 Pursuant to Neb.Rev.Stat. § 29-1927 (Reissue 1995), a defendant is precluded from offering evidence for the purpose of establishing an alibi to an offense unless notice of intention to rely upon an alibi is given to the county attorney and filed with the court at least 30 days before trial. To establish an alibi defense, a defendant must show (1) he was at a place other than where the crime was committed, and (2) he was at such other place such a length of time that it was impossible for him to have been at the place where and when the crime was committed. State v. Moreno, 228 Neb. 210, 422 N.W.2d 56 (1988); State v. Jacobs, 226 Neb. 184, 410 N.W.2d 468 (1987).
In the present case, Veatch attempted to adduce evidence that he was present at his father's home at the time Warner claims Veatch and his father hired him to copy the threatening letter to Veatch's wife, but that he was there only briefly and that he left immediately upon seeing Warner. The State objected to this proffered evidence as being alibi evidence for which Veatch had not provided the statutorily required notice, and the court sustained the objection.
On appeal, Veatch argues that the proffered evidence was not alibi evidence. We disagree. Veatch was attempting to present evidence that he left the scene and was, accordingly, at some place other than where the crime was committed and that he was not present for a sufficient time to have committed the crime. Although perhaps untypical, this evidence was alibi evidence, and the trial court committed no error in sustaining the State's objections. This assignment of error is without merit.

5. SUFFICIENCY OF EVIDENCE
The next issue raised by Veatch is whether there was sufficient evidence to sustain a conviction for terroristic threats. Veatch has raised this issue by challenging the district court's denial of Veatch's motions to dismiss and by specifically challenging the sufficiency of the evidence to sustain the conviction. We find that the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction.
Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. State v. White, 272 Neb. 421, 722 N.W.2d 343 (2006).
Neb.Rev.Stat. § 28-311.01 (Reissue 1995) provides, in relevant part, that a person commits terroristic threats if he or she threatens to commit any crime of violence with the intent to terrorize another or in reckless disregard of the risk of causing such terror. Section 28-311.01 requires neither an actual intent to execute the threats made nor that the recipient of the threats actually be terrorized. See State v. Saltzman, 235 Neb. 964, 458 N.W.2d 239 (1990).
In this case, the State adduced evidence establishing the following: Veatch's wife left the marital home in June 2003 and filed for divorce in July 2003. Veatch was angry about the divorce and wanted custody of his and his wife's two children. On October 26, 2003, Warner went to Veatch's father's house and had a conversation with *828 Veatch and Veatch's father. Veatch "was complaining about his wife at that time, how she kept sleeping around on him and she wasn't no good." Veatch "said he wished he knew of a way to get rid of her, because she was a problem to him." Veatch dictated as his father wrote a letter to Veatch's wife. Veatch told his father to include information in the letter about "where [Veatch's wife] was from and that she had written off some dope dealers in another state or something, and that they had followed her down here, and that they were going to kill her if she didn't make things right back there where she was from." Veatch asked Warner to rewrite the letter in Warner's handwriting, which Warner did. Warner "was told to put [the letter] inside [Veatch's wife's car], put it under the windshield wiper, put it under the gas tank or put it in her mail box." Warner placed the letter inside Veatch's wife's gas tank compartment. Veatch's wife found the letter when getting gas, read the letter, "was pretty scared" that "somebody was going to hurt [her]," and delivered the letter to law enforcement. The letter was received at trial. The letter is as follows:
Its been a few years and at last weve found you, I dont fuckin appreciate having to travel al this way to not find you at your address on C street you still have an obligation to us. Im giving you one chance to make this right you left from Renton in a hurry
lye been hired to just fuck you off but after my trip to Rapid City I found out you now have children usually in a situation like this I wouldnt give a fuck I was ordered to stay in your area until your obligation has been meant.
I will see you soon. You can run again and this time I will be forced to either burry your ass or bring you back to Washington its your Desicion is yours.
The above evidence, viewed in a light most favorable to the State, establishes that Veatch threatened to commit a crime of violence with the intent to terrorize his wife or in reckless disregard of the risk of causing such terror. See § 28-311.01. There is no merit to Veatch's assertions to the contrary.

6. MOTION FOR MISTRIAL
The final issue raised by Veatch is whether the district court erred in overruling Veatch's motion for mistrial "and permitting the jury to be separate and apart for a period of six days." Brief for appellant at 3. This issue concerns the fact that one of the jurors became ill and was hospitalized briefly during the jury's deliberations, causing the jury to be adjourned for several days before reconvening and reaching a guilty verdict. Veatch moved for a mistrial at the beginning of the delay and did not renew the motion at any time during the delay. We do not find that the district court abused its discretion in denying the motion for mistrial at the time it was made.
The decision whether to grant a motion for mistrial is within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. State v. Gutierrez, 272 Neb. 995, 726 N.W.2d 542 (2007); State v. Floyd, 272 Neb. 898, 725 N.W.2d 817 (2007). Pursuant to Neb.Rev.Stat. § 25-1117 (Reissue 1995), a jury may be discharged by the court on account of the sickness of a juror, or other accident or calamity requiring its discharge, or by consent of both parties, or after it has been kept together until it satisfactorily appears that there is no probability of its reaching an agreement.
In the present case, trial concluded on Friday, March 10, 2006, and the court *829 specifically asked the parties if there was any objection to the jury's being instructed that if it had not reached a verdict by 6 p.m., it would adjourn for the weekend and return to finish deliberations on the following Monday morning. There was no objection. The case was submitted to the jury for deliberation at 12:05 p.m., the jury did not reach a verdict, and the jury was adjourned for the weekend.
On the following Monday morning, the court was informed that one of the jurors had been hospitalized. The State represented to the court that it had been informed the juror would not be available for deliberations on that Monday and that it was awaiting further news concerning whether the juror would be able to return for deliberations the next day. Veatch then moved for a mistrial or for discharge of the jury pursuant to § 25-1117. The court ruled that it was "premature to conclude that the delay in deliberations, because of the illness of the juror, [was] a sufficient problem to warrant a mistrial" at that point in time. The court stated, "At this point, we just don't know if the jury can resume deliberations tomorrow or not." The court then ordered the jury to reconvene the next day.
The next day, Tuesday, the court was informed that the hospitalized juror would not be available that day or Wednesday, but would possibly be available to resume deliberations on Thursday. Veatch's counsel indicated to the court that he had reduced his motion for mistrial to writing and submitted a brief in support of the motion. The court addressed the available members of the jury and inquired whether the passage of time was presenting "a problem in terms of memory" for any of the jury members, and the court noted that "nobody has indicated there's a problem." The court further inquired whether the jury members could "look at the evidence, consider the evidence, the judge's instructions[,] and exchange information and continue with deliberations." The record does not reflect any specific additional ruling on Veatch's motion for mistrial on Tuesday.
The record reflects that the jury reconvened on Thursday and reached a verdict. There was no additional motion for mistrial made by Veatch.
On the record presented, we do not find an abuse of discretion by the district court in denying Veatch's motion for mistrial. On the Monday on which the motion was first made, the court specifically ruled that it was premature to conclude that the delay in resuming deliberations would warrant a mistrial. We do not find an abuse of discretion in that conclusion. At that point in time, there was no determination about how long the delay in resuming deliberations would be and there was nothing to indicate that the delay in resuming deliberations would have a damaging effect such that it would prevent a fair trial. See State v. Mason, 271 Neb. 16, 709 N.W.2d 638 (2006) (mistrial is properly granted in criminal case where event occurs during course of trial which is of such nature that its damaging effect cannot be removed by proper admonition or instruction to jury and thus prevents fair trial).
Assuming that Veatch's submission of the motion in writing and submission of a brief in support of the motion on Tuesday could be construed as a renewal of the motion, we also do not find an abuse of discretion in the court's implied overruling of the motion again on that day. The court specifically inquired, on the record, whether the delay was having a negative effect on the jurors' memory and whether the jurors could still consider the evidence and instructions and continue deliberations. We cannot find an abuse of discretion in the court's implied conclusion that a *830 mistrial was not warranted at that time, and Veatch did not renew the motion at any later time when the jury did reconvene and reach a verdict. This assignment of error is without merit.

7. OTHER ARGUMENTS
Any other arguments raised by Veatch in his brief either were not properly both assigned as error and argued in the brief or were not preserved for appellate review by Veatch's motion for new trial. As such, any other arguments raised by Veatch in his brief not specifically addressed in this opinion are not properly before us for resolution, and we will not further discuss them.

V. CONCLUSION
We find that only the issues properly preserved for appellate review in Veatch's motion for new trial are before us for resolution because Veatch did not file a timely direct appeal from the judgment. The issues that are properly before us are without merit. The court did not abuse its discretion in receiving the State's rule 404(2) evidence, in overruling Veatch's chain of custody objection to the letter containing the charged terroristic threat, in sustaining the State's objection to proffered alibi evidence, or in denying Veatch's motion for mistrial. Additionally, the evidence presented was sufficient to support the conviction. We affirm.
AFFIRMED.